1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  CATHERINE WOODBRIDGE, State Bar No. 186186
   Supervising Deputy Attorney General
3  ERICK J. RHOAN, State Bar No. 283588
   Deputy Attorney General
4    2550 Mariposa Mall, Room 5090
     Fresno, CA  93721-2271
5    Telephone:  (559) 705-2310
     E-mail:  Erick.Rhoan@doj.ca.gov
6  *Attorneys for Defendant, the State of California, by*
   *and through the 44th District Agricultural*
7  *Association*

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13  | **ROBERT GRISAK,** | 2:22-cv-01746-JAM-CKD |
    |---|---|
    | Plaintiff, | **CONSENT DECREE AND ORDER** |
    | v. | |
    | **44TH DISTRICT AGRICULTURAL ASSOCIATION (ERRONEOUSLY SUED AS 44TH DISTRICT AGRICULTURAL ASSOCIATION AND STATE OF CALIFORNIA),** | |
    | Defendants. | |

21        Plaintiff, Robert Grisak, and Defendant, the State of California, by and through the 44th

22  District Agricultural Association ("DAA"), hereby agree to resolve this action as follows:

23  **I.    INTRODUCTION**

24        **A.**    The named Plaintiff brought this lawsuit against Defendant pursuant to Title II of

25  the Americans with Disabilities Act ("ADA"), the Section 504 of the Rehabilitation Act of 1973,

26  and the California Disabled Persons Act, alleging that he was denied his right to full and equal

27  access to, and use and enjoyment of the DAA's facilities and programs at the Colusa County

28  Fairgrounds ("Fairgrounds"), located at 1303 10th Street, Colusa, California, during the 2022

                                          1

Colusa County Farm Show ("Farm Show"). Plaintiff alleges that he encountered a lack of adequate ADA signage, architectural barriers, unavailable handicapped bathrooms, uneven paths of travel, lack of accessible parking, accessible entryways, and other architectural and programmatic access barriers.

**B.** In order to avoid the costs and expense of protracted litigation, Plaintiff and Defendant ("Parties") agree to enter into this Consent Decree and Order to resolve all claims raised in the Complaint. Accordingly, the Parties agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning all of Plaintiff's claims against Defendant.

## II.   RECITALS

**A.** Plaintiff visited the Fairgrounds on February 3, 2022 during the annual Farm Show operated by Defendant, as well as February 23, 2022 to address Defendant's Board of Directors regarding the multiple barriers to access he encountered at the Farm Show. Both times, Plaintiff experienced multiple barriers to access.

**B.** Prior to the commencement of this lawsuit, Plaintiff retained a Certified Access Specialist to evaluate the Fairgrounds regarding its compliance with federal and California disability access laws. The Certified Access Specialist prepared a report ("Site Assessment Report") listing access barriers found at the Fairgrounds. The Site Assessment Report is attached hereto as Exhibit A.

**C.** Defendant denies any and all liabilities to Plaintiff and deny that Defendant violated any law – federal, state, or local – pertaining to access for persons with disabilities at the Fairgrounds. However, in the spirit of compromise to avoid further litigation, Defendant shall address and remediate each of the alleged access barriers contained in Exhibit A, so as to achieve improvements to architectural and programmatic access at the Fairgrounds for persons with disabilities under both California state and federal law.

**D.** During the course of the lawsuit, Defendant retained its own expert from the California Construction Authority ("CCA"), a joint powers authority, to review and analyze the Site Assessment Report. The CCA is responsible for construction management for California's

network of fairs, including drafting designs and plans for construction, submitting those plans to the Division of the State Architect for approval, and upon approval, coordinating the posting and soliciting of construction bids to implement the approved construction plans. CCA also manages the construction phases of each project to ensure its compliance with all California state and federal laws.

      **E.**     Defendant shall retain CCA to implement the Site Assessment Report in three phases, Phase I, Phase II, and Phase III, as described below.

### III.  DEFINITIONS

      **A.**     "Plaintiff's Counsel" shall refer to Steven L. Derby and Anthony Goldsmith Derby, McGuinness & Goldsmith, LLP, 501 W. Broadway, Suite 800, San Diego, CA 92101

      **B.**     "Defendant" shall refer to the 44th District Agricultural Association.

      **C.**     "Consent Decree and Order" shall refer to this document.

      **D.**     "CCA" shall refer to the California Construction Authority, a joint powers authority.

      **E.**     "Fairgrounds" shall refer to the Colusa County Fairgrounds located at 1303 10th Street, Colusa, CA 95932. A map of the Fairgrounds is attached hereto as Exhibit B.

      **F.**     "Party" or "Parties" shall mean and refer to Plaintiff and Defendant.

      **G.**     "Settlement Period" shall mean refer to the period of time described in Section IV.

### IV.  SETTLEMENT PERIOD

      **A.**     This Consent Decree and Order shall become effective upon the date it is entered by the Court. Construction for Phase I shall commence after funding for Phases I and II of the Fairgrounds is achieved and the Division of the State Architect has approved Defendant's plans for construction, remediation, and repair. Defendant shall have three years from the date funding is achieved to complete Phases I and II of the construction. The terms of this Consent Decree and Order shall expire after three years from the date of funding begins, or notice to Plaintiff's counsel that construction Phases 1 and 2 have been completed, whichever is later. Plaintiff or Defendant may petition the Court for an extension to the extent any of the improvements required under Sections V(A) and V(B) will not be completed within the Settlement Period. In deciding a

3

disputed request for an extension, the Court may exercise its discretion, taking into account all relevant information.

      **B.**    Defendant agrees to use best efforts to seek funding for Phases 1 and 2 as set forth below from all available sources including but not limited to the California State Legislature. Defendant shall also communicate to the California State Legislature that full funding of Phases I and II are required to meet the obligations of this Consent Decree and Order. However, nothing in this Section shall affect the enforceability of this Consent Decree, which shall remain in full force and effect as an order of this Court until its terms are fulfilled.

**V.**   **INJUNCTIVE RELIEF.**

The following provisions are intended to provide injunctive relief:

      **A.**    **Construction Completion Schedule**

        **1.**   The Defendant shall schedule and complete the access modifications described in Section V(C) of this Consent Decree and Order, with the goal of addressing all of the items outlined in Exhibit A within 3 years of the date that full funding of Phases I and II is achieved, according to the following schedule:

          **i.**  **Phase I** – Construction and remediation for Phase I shall commence upon the date of funding and be completed no later than 2 years from that date.

          **ii.**  **Phase II** – Construction and remediation for Phase II shall commence upon the completion of Phase I and be completed no later than 3 years from the date of funding for Phases I and II.

          **iii.**  **Phase III** – There is no assigned construction schedule for this Phase, as stated in Section V(E) below.

        **2.**   Once funding for this Consent Decree and Order is achieved, Defendant shall direct CCA to draft and design the necessary plans for construction and remediation of those items listed in Section V(C) of this Consent Decree and Order in preparation for submission to the Division of the State Architect. Once the Division of the State Architect has approved these plans, Defendant shall direct CCA to implement Section V(C) of this Consent Decree and Order to begin remediation of the Fairgrounds.

4

**3.** Defendant is not required to perform the exact method suggested in the Site Assessment Report to achieve those corrections subject to the agreement that any such remediation fully comply with the applicable access standard for that feature or element. For example, rather than remediate barriers in some older structures, Defendant may simply decide to demolish that structure and replace it with a new accessible structure serving the same function(s).

### B. Standards for Corrective Work

The Parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in Title 24 of the California Code of Regulations and the Americans with Disabilities Act Access Guidelines. In the event of conflict between any of these applicable standards, the Defendant will use the standard which applies and which provides the highest level of access. In implementing the Site Assessment Report, the Defendant will comply with the above-referenced standards as they are in effect at the time the work is performed. To ensure that the Parties are utilizing the same standards, the Defendant will promptly notify Plaintiff in writing if they believe changes to these standards have occurred.

### C. Phase I

Phase I shall consist of any construction, remediation, or repairs of the Fairgrounds needed for programmatic access to the Annual Farm Show.

#### 1. Expanding Accessible Parking Access in the North and East Parking Lots

All necessary construction and remediation outlined in Exhibit A, Items 1 through 7, and 9 through 14, to ensure accessible parking access at the Fairgrounds' North and East Parking Lots, which also includes appropriate entrance and directional signage. This will also include an accessible path to and through the North and Festival Gates.

#### 2. Accessible Pathways Between Farm Show Exhibit Buildings.

All necessary construction and remediation of the several walking paths between the exhibit buildings commonly used during the Defendant's Annual Farm Show, to wit, the Main Exhibit Building, Etchepare Hall, Festival Hall, Atwood Hall, and the Youth Building. This will be a

5

partial implementation of Exhibit A, Item 29, to the extent it applies to the walking paths between the aforementioned exhibit buildings.

        **3.**    **Accessible Signage, Doors, and Bathrooms Within Exhibit Buildings.**

        **i.**  **Atwood Hall**

All necessary construction, remediation, and installation of directional signage, door stop removal, bathrooms and bathroom fixtures, and other repairs necessary at Atwood Hall, as outlined in Exhibit A, Items 39 through 45.

        **ii.**  **Etchepare Hall**

All necessary construction, remediation, and installation of clear space for doors, door signage, bathrooms and bathroom fixtures, and other repairs necessary at Etchepare Hall (erroneously referred to as "Brown Hall") outlined in Exhibit A, Items 46 through 53.

        **iii.**  **Festival Hall**

All necessary construction, remediation, and installation of curb cut ramps, door stop removal, door repair, door signage, bathrooms and bathroom fixtures, and other repairs necessary at Festival Hall outlined in Exhibit A, Items 31 through 38.

        **iv.**  **Main Exhibit Building**

All necessary construction, remediation, and installation of necessary signage, door clearances, door signage, bathrooms and bathroom fixtures, and other barrier removals necessary at the Main Exhibit Building.

        v.  Youth Building – all necessary construction, remediation and installation of new fixtures required to make the building fully accessible according to the standards set forth in paragraph V(B) above.

    **D.**    **Phase II** – All necessary construction, remediation, or repairs of the Fairgrounds needed for programmatic access at the Fairgrounds that are listed within Exhibit A that are not a part of Phase I.

    **E.**    **Phase III** – This phase shall consist of any construction, remediation, or repairs at the Fairgrounds that are not necessary for programmatic access to the Farm Show but constitute a barrier to access for persons with disabilities at the Fairgrounds. Defendant shall, for the period of

6

this Consent Decree and Order, take all steps necessary to remediate or remove these barriers as necessary under applicable law.

**F.     ADA Training**

Defendant shall provide, on an annual basis, training to the Defendant's Board of Directors and Chief Executive Officer regarding their obligations under the ADA and this Consent Decree and Order. Such training will be at least one hour in duration and will be provided at Defendant's cost by an individual or organization knowledgeable regarding ADA requirements and will include information regarding individuals with a wide variety of different types of disabilities and the types of modifications and auxiliary aids or services that such individuals may require for the full and equal enjoyment of Defendant's services, programs, and activities associated with the Fairgrounds. Defendant shall maintain confirmation of training conducted pursuant to this section, which will include the names and respective titles of the attendees, as well as the date and time of the training session.

**G.     Maintenance of Accessible Features**

Once barrier remediation is complete, Defendant shall, for the period of this Consent Decree and Order, use its best efforts to ensure that access features are maintained in accessible condition, including taking all steps necessary to inspect, test, and maintain all accessible features at the Fairgrounds including those remediated and those found to be in compliance at the time of the Site Assessment Report.

**VI.   REPORTS, MONITORING AND ENFORCEMENT**

**A.     Notice**

**1.**     Within 30 days after Phase I construction has commenced, and every 30 days after that, unless otherwise stipulated, Defendant shall provide written notice to Plaintiff's Counsel of the status of its compliance with this Consent Decree and Order. Defendant shall maintain records to document its compliance with this Consent Decree and Order and make them available, upon request, to Plaintiff's Counsel.

**2.**     Defendant will provide Plaintiff's counsel these notices via electronic mail, unless otherwise agreed upon by the Parties' counsel.

**3.** Defendant's requirement to provide notice shall terminate after the completion of the three-year settlement period or completion of Phases 1 and 2, whichever is later.

**B. Monitoring**

**1.** To assist in ensuring compliance with Consent Decree and Order, Plaintiff's counsel shall monitor Defendant's compliance with this Consent Decree and Order, at intervals to be agreed upon by the Parties' counsel. Plaintiff's counsel's fees for monitoring shall be paid from the settlement funds provided in Section VIII(A)(3).

**VII. DISPUTE RESOLUTION**

Any dispute concerning interpretation, implementation, and/or compliance with this Consent Decree and Order, or in the event unforeseen difficulties prevent Defendant from completing any of the agreed-upon injunctive relief, shall be resolved as follows:

**A. Notice**

The Party that wishes to initiate the dispute resolution process shall notify the other party in writing of the nature of the dispute or difficulty. Such notification shall include a reasonable explanation of the legal and factual basis for the Party's position to allow the other party to review and investigate.

**B. Meet and Confer**

Counsel for the Parties shall meet and confer within 30 days of the notification of the dispute, to attempt to resolve the dispute or discuss the difficulty with completing the injunctive relief. The Parties will allow a reasonable time (e.g., 30 to 60 days) to attempt to resolve the dispute without the need to proceed further in the dispute resolution process.

**C. Submission to Court**

If the dispute or difficulty has still not been resolved, counsel for the Parties may submit the matter to the Court for formal resolution.

**VIII. RESOLUTION OF PLAINTIFF'S DAMAGES, ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS.**

**A.** In addition to the injunctive relief set forth herein, Defendant agrees to make the following payments:

**2.**    Within 30 days of receiving Plaintiff's W-9, Defendant, via the California Fair Services Authority, shall deliver via guaranteed overnight delivery a check in the amount of $15,000 (fifteen thousand dollars) payable to Plaintiff ROBERT GRISAK.

**3.**    Within 30 days of receiving Plaintiff's Counsel's W-9, Defendant, via the California Fair Services Authority, shall deliver via guaranteed overnight delivery a check payable to Derby, McGuinness & Goldsmith, LLP in the amount of $65,000 (sixty-five thousand dollars).

**4.**    All checks shall be delivered to the San Diego office of Derby, McGuinness & Goldsmith, LLP located at 501 West Broadway, Suite 800, San Diego, CA 92101.

## IX.    FULL AND COMPLETE RELEASE

**A.**    In return for the consideration provided for in this Consent Decree, on the date of Final Approval, the Plaintiff shall and does release, discharge, and covenant not to sue the State of California, and each and every constituent agency, board, department, office, commission, district, or entity of the State of California, the 44th District Agricultural Association, and their officers, directors, employees, attorneys, agents, insurers, contractors, lenders, predecessors in interests, successors and assigns (the "Released Parties") from any and all actions, causes of action, claims, or other demands for declaratory and/or injunctive relief relating to class-wide architectural and/or programmatic access for persons with disabilities at the Defendant's programs, services, activities and facilities prior to and during the settlement period. This release includes claims under the Americans with Disabilities Act, the Rehabilitation Act of 1973, and California Disability Access Laws (including, but not limited to, California Civil Code §§ 51 and 54, et seq.) against the Released Parties. This release includes litigation costs and attorney fees incurred by Plaintiff in this Action, except as otherwise provided by this Consent Decree. This release does not apply to programs, services and activities of state agencies other than the 44th District Agricultural Association.

**B.**    Accordingly, all rights under section 1542 of the Civil Code of California are hereby expressly waived. Section 1542 provides as follows:

9

"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Plaintiff's counsel has explained the significance and consequences of a California Civil Code Section 1542 waiver to Plaintiff, and Plaintiff understands the same and assume full responsibility for, and risk of, any damages or losses caused by this waiver.

**C.**     It is further understood and agreed that Defendant, by entering into this settlement for a Consent Decree and Order, is a compromise of a disputed claim. The payment or other consideration exchanged is not an admission of liability on the part of the State of California, its agents and employees.

## X.   DISMISSAL

Plaintiff hereby authorizes and directs his attorney to dismiss this entire pending lawsuit, in its entirety, with prejudice, except that the Court shall retain jurisdiction to enforce the Consent Decree and Order.

## XI.   FURTHER RELIEF

Any party may petition the Court for relief from the provisions hereunder upon a showing of events beyond the control of that Party which may preclude either Plaintiff or Defendant from their timely compliance with the provisions of this Consent Decree and Order.

## XII.   ENTIRE AGREEMENT

This Consent Decree and Order, including its Exhibits, expresses and constitutes the sole and entire agreement between the Parties and supersedes all prior agreements, negotiations and discussions the Parties and/or their respective counsel with respect to the subject matter of this lawsuit. The Consent Decree and Order supersedes any prior or contemporaneous oral or written agreements or understandings between and among the Parties and/or counsel for the Parties regarding the subject matter of this lawsuit.

10

**XIII. SEVERABILITY**

If any term of this Consent Decree and Order is determined by the Court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**XIV. AUTHORITY**

Each party represents to all other Parties that such Party has full power and authority to enter into this Consent Decree and Order, that the execution and delivery thereof will not violate any agreement to which such Party is a Party or by which such Party is bound, and that this Consent Decree and Order, as executed and delivered, constitutes a valid and binding obligation of such Party, enforceable in accordance with its terms. The signatories to this Consent Decree and Order expressly warrant that they have been authorized to execute this Consent Decree and Order and to bind their respective Parties to the terms and provisions herein. This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

/ / /

/ / /

/ / /

1    **APPROVED AS TO FORM:**

2    Dated: 2/21/2024                   DERBY, McGUINNESS & GOLDSMITH LLP

3

4                               By:    */s/ Steven L. Derby*

                                        Steven L. Derby

5                                         Anthony E. Goldsmith

                                        *Attorneys for Plaintiff*

6

7    Dated: 2/21/2024                   ROB BONTA

                                      Attorney General of California

8                                     CATHERINE WOODBRIDGE

                                      Supervising Deputy Attorney General

9                                     */s/ Erick J. Rhoan*

10                                     ERICK J. RHOAN

                                      Deputy Attorney General

11                                     *Attorneys for Defendant, the State of California, by and through the 44th District Agricultural Association*

12

13    **IT IS SO STIPULATED:**

14

15    Dated:                        By: _____

                                        Terry Bressler, President, Board of Directors

16                                     44th District Agricultural Association

17

18                        By: _____

                                        Laura Ford, Chief Executive Officer

19                                     44th District Agricultural Association

20

21

22                        By: _____

23    Dated:                                Plaintiff ROBERT GRISAK

24

25    / / /

26    / / /

27    / / /

28    / / /

1    **APPROVED AS TO FORM:**

2    Dated:                                    DERBY, McGUINNESS & GOLDSMITH LLP

3

4                                              By:    */s/ Steven L. Derby*
                                                      Steven L. Derby
5                                                     Anthony E. Goldsmith
                                                      *Attorneys for Plaintiff*
6

7    Dated:                                    ROB BONTA
                                               Attorney General of California
8                                              CATHERINE WOODBRIDGE
                                               Supervising Deputy Attorney General
9
                                               */s/ Erick J. Rhoan*
10                                             ERICK J. RHOAN
                                               Deputy Attorney General
11                                             *Attorneys for Defendant, the State of California, by*
                                               *and through the 44th District Agricultural*
12                                             *Association*

13   **IT IS SO STIPULATED:**

14

15   Dated:                                    By: _____
                                                      Terry Bressler, President, Board of Directors
16                                                    44th District Agricultural Association

17
                                               By: _____
18                                                    Laura Ford, Chief Executive Officer
                                                      44th District Agricultural Association
19

20

21

22                                             By: _____
     Dated: 2-17-2024                                 Plaintiff ROBERT GRISAK
23

24

25   ///

26   ///

27   ///

28   ///

                                          12

1  | **APPROVED AS TO FORM:**

2  | Dated:                    DERBY, McGUINNESS & GOLDSMITH LLP

3

4  |                          By:    /s/ Steven L. Derby
                                     Steven L. Derby
5  |                                 Anthony E. Goldsmith
                                     *Attorneys for Plaintiff*
6

7  | Dated:                    ROB BONTA
                               Attorney General of California
8  |                           CATHERINE WOODBRIDGE
                               Supervising Deputy Attorney General
9
                               /s/ Erick J. Rhoan
10 |                           ERICK J. RHOAN
                               Deputy Attorney General
11 |                           Attorneys for Defendant, the State of California, by
                               and through the 44th District Agricultural
12 |                           Association

13 | **IT IS SO STIPULATED:**

14

15 | Dated:                    By:    Terry Bressler
                                      Terry Bressler, President, Board of Directors
16 |     2/20/2024                    44th District Agricultural Association

17 |                          By:    Laura Ford
18 |                                 Laura Ford, Chief Executive Officer
                                     44th District Agricultural Association
19

20

21

22 | Dated:                    By:    _____
23 |                                  Plaintiff ROBERT GRISAK

24

25 | ///

26 | ///

27 | ///

28 | ///

12

Consent Decree and Order  (2:22-CV-01746-JAM-CKD)

**UPON STIPULATION OF THE PARTIES AND GOOD CAUSE APPEARING, IT IS SO ORDERED:**

Dated: March 12, 2024

/s/ John A. Mendez
_____
THE HONORABLE JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE

13